INDUSTRIA BUSINESS LAWYERS LLP
Matthew J. Bouillon Mascareñas (*pro hac vice*)
matthew@iblpartners.com
500 Marquette Ave. NW, Suite 1200
Albuquerque, NM 87102
(505) 317-6953

Omar Khan (Bar No. 320189)
m.khan@iblpartners.com
1128 20th St., #6
Santa Monica, CA 90403
(330) 812-0702

*Attorneys for Plaintiff*
DAVIS YU

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DAVIS YU,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>VIDY, INC.,<br>PATRICK COLANGELO,<br>JACOB ROSIN, and<br>DOE DEFENDANTS 1-3,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-01343-WLH-SSC<br><br>**CORRECTED JOINT RULE 26(f) REPORT**<br><br>*Conference Date*:  June 21, 2024<br>*Complaint Filed*:  February 19, 2024<br>*Answer of Jacob Rosin*: May 3, 2024 |

The parties/counsel identified below conferred as required by Fed. R. Civ. P. 26(f), Local Rules, and this Court's order on May 10 and June 4, 2024, and prepared the following report. Defendant Jacob Rosin did not confer with the parties and therefore did not participate in the creation of this Report.

## 1. STATEMENT OF THE CASE

Plaintiff Davis Yu filed his Complaint in this matter on February 19, 2024. Defendant Jacob Rosin answered on May 3, 2024. Defendant Patrick Colangelo waived service on May 14, 2024, and his answer is due by July 15, 2024. Plaintiff sought and obtained service on Vidy, Inc., via publication through the California Secretary of State on May 23, 2024, and its answer is due on June 13, 2024.

**Plaintiff's Statement**: Plaintiff alleges that the California-based Defendant Vidy, Inc. (the "Company"), promoted a token swap whereby investors could send their Ethereum-based VIDY tokens to addresses specified and controlled by the Company in return for the Company's new VIDYX token at a predefined 50:1 ratio. Plaintiff participated in the swap as the largest individual holder of VIDY tokens and did as the Company specifically prescribed, but Plaintiff never received any VIDYX tokens nor a refund of his investment. He now seeks to recover damages for the acts and omissions on the part of the Company and its executives which caused his losses.

Plaintiff alleges that Defendant Vidy, Inc., through its agents, engaged in fraud by materially misrepresenting the terms of the token swap; securities fraud for omitting material information in offering and conducting the swap (which he alleges is an investment contract); conversion for unlawfully interfering with Plaintiff's dominion over his own property; breaching its contract to perform the swap in the first

instance; and breaching the implied covenant of good faith and fair dealing by unfairly interfering with Plaintiff's right to receive the benefits of his contract with Vidy, Inc. To the extent no enforceable contract is found to exist between Plaintiff and Defendant Vidy, Inc., Plaintiff alleges that the Company and the individual defendants were unjustly enriched by their non-performance, and that any windfalls they received should be disgorged.

Plaintiff also contends that the individual defendants–Mr. Colangelo, the company's chief executive officer, and Mr. Rosin, its senior blockchain developer (as well as other Doe defendants)–are named individually because they were so integral to the token swap by virtue of their executive positions that they bear personal liability for its failure. Had the swap been programmed to execute automatically upon the arrival of Plaintiff's VIDY tokens, Plaintiff regards it as reasonable to expect that the VIDYX tokens would likewise have arrived. Instead, since Plaintiff received no tokens at all in what appears to have been a manual process, Plaintiff alleges that culpable human intermediaries necessarily participated in the decision to withhold his tokens. Moreover, since it has historically been common in the cryptocurrency industry for insiders to receive large, undisclosed allocations of their own token, Plaintiff alleges that Defendants Colangelo and Rosin's decision to forego Plaintiff's swap resulted in a significant windfall to their benefit. Finally, to the extent the individual defendants are not primarily liable under each of these theories, Plaintiff alleges that their liability arises secondarily due to their having aided and abetted conduct they knew to be wrong so as to reap greater profits for themselves.

**Defendant Patrick Colangelo's Statement.** Defendant Colangelo is a Canadian citizen, resident of New York, and inventor of Vidy, a

technology platform that embedded hyper-contextual videos into lines of text on web pages using natural language processing, and rewarded users for watching and activating these videos through a blockchain-based protocol. Colangelo was never associated with the company that Plaintiff has sued, though that company shares the same name as the "Vidy" tradename that was used to market the Vidy technology. Colangelo oversaw the development and deployment of the technology and worked at all relevant times from New York. The creation of the VIDY and/or VIDYX tokens, their placement on the Huobi exchange in Asia, all business related to the listing of VIDY and/or VIDYX, investments in those tokens, and all other financial and/or non-technological aspects of Vidy operations, was overseen by the Vidy Foundation, a Singaporean entity headquartered in Singapore, and Spayce Asia Pte Ltd., also known as "Vidy Asia," a Singaporean entity also headquartered in Singapore, all directed and controlled by a citizen of Singapore and all non-parties to this suit. Colangelo and Rosin, through an affiliate that is also not a party to this suit, oversaw the technical aspects of the core Vidy platform. VIDY tokens were not marketed to U.S. citizens, and no U.S. citizens were permitted to acquire VIDY tokens from Huobi or otherwise.

Any and all communications, transactions, decisions, or representations related to Plaintiff's allegations would have involved him and the Asia-based representatives of Vidy Foundation and Spayce Asia, and all would have occurred in Asia on communications platforms run by citizens and residents in Asia. Colangelo has no personal knowledge of the Plaintiff's alleged swap issue, and, more generally, did not control Vidy Foundation or Spayce Asia's decisions with regard to advertising the terms of any swap, posting such terms on any platforms, reviewing, approving, or denying any request for a swap. Neither Colangelo nor, to

the best of Colangelo's knowledge, Defendant Rosin were ever once notified by the Asian companies that there was an ongoing issue or alleged dispute with Plaintiff.

## 2. SUBJECT MATTER JURISDICTION

Jurisdiction in this lawsuit is proper pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen and resident of Hong Kong, People's Republic of China. Defendant Vidy, Inc., is a California corporation. Defendant Colangelo is a Canadian citizen who resides in New York, NY. Defendant Rosin is a US citizen who resides in Madison, WI.

## 3. LEGAL ISSUES

Defendant Colangelo intends to raise numerous legal issues via motions filed under Fed. R. Civ. P. 12(b), as well as additional motions if the case proceeds past the threshold. Colangelo will show that (i) this Court lacks personal jurisdiction over him because at all relevant times he has resided in New York and none of Plaintiff's allegations or claims against Colangelo arise from any contacts between him and California such that specific jurisdiction would obtain; (ii) that this is the improper venue for Plaintiff's claims because none of the events or transactions underlying his claims occurred in this District, and no other venue provisions of 28 U.S. Code § 1391 would make this the proper venue for this dispute; (iii) that Plaintiff has failed to join required parties—namely, Vidy Foundation, Spayce Asia, and Spayce Asia leadership (including Spayce Asia's CEO, who would have been the person to have overseen any alleged issues with Plaintiff's swap)—and instead sued a different and incorrect company (Vidy, Inc.) whose only apparent relationship to this dispute is that it is using the "Vidy" tradename; (iv) that the Complaint fails to state any claim upon which relief can be granted as to Colangelo, including, without limitation, because Plaintiff has failed to allege that

Colangelo himself took any actions that harmed him, let alone make such allegations with the heightened specificity required to support his fraud claim, and because all transactions involving Plaintiff's alleged investment in VIDY occurred in Asia in relation to an Asian exchange, which did not even permit U.S. investors to invest and is fatal to his claim under U.S. securities laws (among many other fatal defects in the complaint); (v) that, on information and belief, Plaintiff agreed via the terms and conditions that he accepted through the Vidy platform to arbitrate any disputes with Spayce Asia related to his investment and platform usage and that, therefore, this dispute should ultimately be compelled to arbitration in Asia; and (vi) that this case should be dismissed on *forum non conveniens* grounds as substantially all events, witnesses, evidence and the Plaintiff himself are citizens and residents of Asia.

## 4. PARTIES, EVIDENCE, ETC.

Plaintiff's key evidence consists of his own text-based interactions with representatives of Vidy, Inc.; the Company's public-facing statements on its website and social media channels; and public blockchain data showing Plaintiff's tender of VIDY tokens together with other descriptive data for the tokens themselves. In discovery, Plaintiff intends to secure testimony and documentation from the Company's executives describing *inter alia* the Company's chain of command; discrete interactions among these persons pertaining to the token swap; documented transfers of funds in connection with the swap; token allocations; and, in general, the identities of persons exercising control and discretion over the swap. Moreover, since Plaintiff anticipates a defense argument that the token swap was exclusively operated and controlled by Vidy, Inc.'s sister company in Asia–the membership, domicile, and status of which are

largely unknown to Plaintiff–Plaintiff intends to obtain discovery from all relevant persons he can find, whether domestically or abroad, who can confirm or disprove such claims.

As to parties, Defendant Colangelo maintains that several required parties have not been joined, as set forth above, and that the Defendant has incorrectly sued Defendant Vidy, Inc. on the mistaken belief by Plaintiff that this company is affiliated with the Vidy Foundation, Spayce Asia, or any other company related to the Vidy platform, VIDY or VIDYX tokens. To the best of Colangelo's knowledge, this company has no known affiliation with the Vidy platform, the VIDY or VIDYX tokens, or any swap of those tokens, and appears to be a company using the "Vidy" tradename for its own purposes, which purposes are completely unknown to Colangelo.

To the extent this case proceeds past the threshold, Defendant Colangelo intends to rely on the same text messages, social media messages (to the extent they exist) and other evidence in Plaintiff's own possession to demonstrate that any and all of his interactions were with companies headquartered and operating exclusively in Asia, and never with Colangelo, Rosin or anyone under Colangelo's supervision. Colangelo intends to demonstrate through his own and third party testimony that he and Rosin had no part in making any representations to Plaintiff, no part in making any of the decisions or failing to take any actions related to Plaintiff's swap, did not exercise control or discretion over the swap, took no part in posting any terms of the swap or deciding on what terms would be included on any website, no part in controlling the social media channels allegedly used by Plaintiff and the Asia-based companies and individuals he interacted with, and otherwise should not be a defendant in this case.

The parties agree to work together regarding the scope and format of any production of electronically stored information.

## 5. DAMAGES

The value of Plaintiff's investment in VIDY tokens at the time of his investment was $772,500. Plaintiff reasonably expected to receive 11,885,617 VIDYX tokens sometime between late February and mid-March 2021, during which time the market value of those tokens experienced a parabolic rise. On March 1, 2021, one VIDYX token was valued at approximately $0.15, and Plaintiff's holdings would have been worth approximately $1,782,842. Then, on March 26, 2021, one VIDYX token had increased in price to $3.25, making Plaintiff's putative holdings worth $38,628,255. Because Plaintiff's token divestment plan was based on a detailed consideration of market liquidity conditions and gradual selling over time, it is reasonable to conclude that his actual damages are between $5,000,000 and $15,000,000.

Defendant Colangelo has no personal knowledge regarding these issues or amounts, however, to the extent Plaintiff has suffered any recoverable damages, Colangelo maintains that he is not entitled to recover any damages from Colangelo or Rosin, nor have Colangelo or Rosin caused him any damage.

## 6. INSURANCE

No insurance coverage is applicable to the acts or omissions alleged in Plaintiff's Complaint.

## 7. MOTIONS

**(a) Procedural**

Plaintiff anticipates moving to add other presently unknown US-based parties as defendants if it is revealed they exercised operational or managerial control over any relevant aspect of the Company's token swap.

Likewise, if additional claims emerge in discovery, Plaintiff anticipates moving to add such claims in the regular course. Plaintiff also reserves his right to seek leave to amend his pleadings to conform to the evidence.

As set forth above, Defendant Colangelo intends to file motions under Rule 12(b), as well as potentially a motion to compel arbitration and/or a *forum non conveniens* motion.

**(b) Dispositive**

Plaintiff anticipates moving for a clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) if Vidy, Inc. fails to answer his Complaint by June 13, 2024.

Plaintiff does not intend to file a motion for summary judgment on any issue at this time as there are significant differences in their factual allegations that must first be addressed in discovery.

Defendant Colangelo intends to file a Rule 12(b)(6) motion to dismiss all claims against him (in the alternative to jurisdictional motions). To the extent Colangelo's presence in this case continues past the threshold, he expects to quickly be in a position to file a motion for summary judgment on all claims against him.

**(c) Class Certification**

Not applicable in this case.

**8. MANUAL FOR COMPLEX LITIGATION**

While this case contains factual elements that are technologically complex, the litigation itself is not complex. Accordingly, use of the Manual for Complex Litigation is not contemplated.

**9. DISCOVERY**

**(a) Status**

1 Neither party has yet made any discovery disclosures; however, Plaintiff's and Defendant Colangelo's initial disclosures are expected to be served within ten days of submission of this Report.

**(b) Plan**

The parties plan to utilize depositions and written discovery. The Parties do not seek a custom limitation on discovery nor any changes to disclosures.

Plaintiff anticipates noticing depositions as to Defendants Colangelo and Rosin as soon as possible. Plaintiff will work with defense counsels to ascertain workable dates.

Defendant Colangelo maintains that he is not subject to personal jurisdiction of this Court and intends to file several jurisdictional and dispositive motions on or before July 15, 2024. In the interim, it would not be appropriate to permit Plaintiff to obtain discovery from Colangelo prior to a determination on his threshold motions. Thus, to the extent Plaintiff would seek to take such discovery, which his counsel has indicated he will, Defendant Colangelo may be forced to move for a protective order and/or a stay of discovery until Colangelo's motions are heard.

**(c) Cut-off**

The parties anticipate fact cut-off on January 8, 2025, which is a deviation of one week from the Court's recommended date so as to not coincide with the New Year holiday.

**(d) Experts**

The parties seek expert disclosures by January 15, 2025, and rebuttals by January 29, 2025. The parties anticipate expert cut-off on January 29, 2025.

**(e) Settlement Conference/ADR**

No negotiations have currently occurred. The parties anticipate a settlement conference/ADR on April 4, 2025, mediated by a Magistrate Judge, if the Court approves.

**10. TRIAL**

**(a) Time Estimate**

The parties estimate that four days are necessary to conduct trial in this matter.

**(b) Jury/Court Trial**

Plaintiff requests a trial by jury.

**(c) Consent to Magistrate Judge for Trial**

The parties consent to a US Magistrate Judge for trial.

**(d) Lead Trial Counsel List**

For the Plaintiff Davis Yu:

Matthew J. Bouillon Mascareñas of Industria Business Lawyers LLP

For the Defendant Patrick Colangelo:

Eliyahu (Eli) Ness of Ness PLLC

For the Defendant Jacob Rosin:

Kevin Levian of Levian Law as advisory counsel with Mr. Rosin appearing *pro se*.

**(g) Independent Expert/Master**

None.

**(h) Other Issues**

None at this time.

Dated: June 13, 2024					Respectfully submitted,

*/s/ Omar Khan*
Matthew J. Bouillon Mascareñas, *pro hac vice*
Omar Khan (SBN 320189)
Industria Business Lawyers LLP
1128 20th St, #6
Santa Monica, CA 90403
(330) 812-0702
m.khan@iblpartners.com
matthew@iblpartners.com
*Attorneys for Plaintiff DAVIS YU*

Dated: June 13, 2024					Respectfully submitted,

*/s/ Eliyahu Ness*
NESS PLLC
Eliyahu Ness (SBN 311054)
eness@nesslegal.com
12100 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
(213) 294-4322
*Attorneys for Defendant PATRICK COLANGELO*